UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES – GENERAL

| Case No. | LA CV16-05914 JAK (JPRx) | Date | May 1, 2017 |
|---|---|---|---|
| Title | Rebecca Morris, et al. v. Blue Shield of California, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR REMAND (Dkt. 26); DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (Dkt. 35)**

## I. Introduction

On July 1, 2016, Rebecca Morris and Becky Ebenkamp (collectively, "Plaintiffs") filed this putative class action in the Los Angeles Superior Court against Blue Shield of California ("Defendant") on behalf of themselves and all similarly situated Blue Shield subscribers who are residents of California. Complaint, Dkt. 1-1. The operative First Amended Complaint ("FAC") advances four causes of action: (1) violation of Cal. Bus. & Prof. Code §§ 17200 et seq., ("UCL") through unlawful activity; (2) violation of the UCL through unfair activity; (3) Violation of the UCL through fraudulent activity; and (4) unjust enrichment. *Id.* Each of these causes of action is premised on public statements made by Defendant. Dkt. 30.

On August 8, 2016, Defendant timely removed the action pursuant to 28 U.S.C. § 1441(a). Notice of Removal, Dkt. 1 at 2. On September 16, 2016, Plaintiffs filed a Motion to Remand. Dkt. 26. Plaintiffs filed the FAC on September 28, 2016. Dkt. 30. Defendant filed an Opposition to Plaintiffs' Motion to Remand on October 7, 2016. "Opposition to Remand," Dkt. 32. Plaintiffs filed a Reply on October 14, 2016. Dkt. 34.Defendant filed a Motion to Dismiss the FAC on October 1, 2016. Dkt. 35. Plaintiffs opposed that motion on November 7, 2016. Dkt. 42. Defendant replied on November 14, 2016. Dkt. 43. On April 26, 2017, the parties filed a joint request for status conference ("Joint Request" (Dkt. 50)), seeking to address the current status of the case.

Both motions were taken under submission on November 16, 2016, pursuant to Local Rule 7.15. Dkt. 44. For the reasons stated in this Order, the Motion to Remand is **DENIED** and the Motion to Dismiss is **GRANTED** without leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-05914 JAK (JPRx) | Date | May 1, 2017 |
|---|---|---|---|
| Title | Rebecca Morris, et al. v. Blue Shield of California, et al. | | |

**II.    Factual and Procedural Background**

   **A.    Rebate Calculations**

Plaintiffs are citizens of California. Dkt. 30 ¶¶ 21-25. Defendant is a health insurance provider based in California that does business throughout the United States. *Id.* ¶ 27. Plaintiffs have been enrolled in Blue Shield health insurance plans since 2014. *Id.* ¶¶ 22, 25.

The Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), which is codified as Section 2718 of the Public Health Service Act, requires insurers that provide coverage to individuals to provide pro rata rebates to their insureds under certain circumstances. 42 U.S.C. § 300gg-18. The rebates are required when an insurer spends less than 80% of the "total amount of premium revenue" on "incurred claims" and "activities that improve health care quality." *Id.* The percentage of premium revenue that an insurer spends on health care and quality improvement activities is deemed its Medical Loss Ratio ("MLR"). *Id.* The MLR is calculated based on data relating to a three-year period: the year being reported and the two prior years. *Id.;* 45 C.F.R. § 158.220(b).

In calculating the MLR, the numerator is the insurer's "incurred claims," which is the sum of the amount of the "direct claims" paid to or received by providers, and the amount spent on health care and quality improvement activities. The denominator is the amount paid to the insurer in "premium revenue," which consists of all amounts paid by enrollees or subscribers for their coverage. These requirements are set forth in the regulations of the Department of Health and Human Services ("DHHS"). 45 C.F.R. §§ 158.140(a), 158.221, 158.30, and Cal. Code Reg. §1300.67.003(b), 45 C.F.R. § 158.140(b)(3).

Each year, DHHS requires insurers to complete an "MLR Report." Cal. Code Reg. §1300.67.003. The MLR Report includes the calculation of the MLR for that year. *Id.* An MLR Report is also filed annually with California's Department of Managed Health Care ("DMHC"). *Id.* In completing the MLR Report, an insurer is required to enter on Line 2.6 of Part 1, "any amount excluded from claims for MLR purposes that are normally included in claims for financial statement purposes." *Id.*

   **B.    Settlement Agreement with DMHC and Calculation of 2014 MLR Reimbursements**

In 2014, Defendant entered into a settlement agreement with the DMHC, under which it repaid more than $38,000 to certain enrollees as "claims adjustments." Ex. A. to FAC, Dkt. 30-1 at 6 (Settlement Agreement). The Settlement Agreement states that in 2014, Defendant's Provider Directory incorrectly listed certain healthcare providers as participating in the networks that Defendant offered to its individual market enrollees. *Id.* ¶¶ 13-21. As a result, certain enrollees had sought and received medical care from the identified providers, but had to pay more out-of-pocket for that care than they would have paid for services provided by physicians within Defendant's covered network. *Id.* The Settlement Agreement required Defendant to reimburse insureds for these additional expenses. *Id.* at 8. It acknowledges that Defendant paid more than $38 million in "claims adjustments" between June 2014 and June 2015, as well as other amounts prior to and after that time period. *Id.* ¶ 21,

Plaintiffs contend that Defendant erroneously classified the payments made pursuant to the Settlement Agreement as "incurred claims" when it calculated its MLR for 2014. The FAC alleges that, as a result of this miscalculation, the numerator for the 2014 MLR calculation was overstated. This in turn resulted in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-05914 JAK (JPRx) | Date | May 1, 2017 |
|---|---|---|---|
| Title | Rebecca Morris, et al. v. Blue Shield of California, et al. | | |

smaller rebates to Plaintiffs. The allegations with respect to the miscalculation of the numerator are based on the actuarial memorandum that accompanied Defendant's 2016 filing with respect to individual market rates. That memorandum identified $44,596,201 of the amount paid in claims in 2014 as "payment errors," and stated that it was not expected that these errors would be repeated in 2016. Dkt. 30 ¶ 11. Defendant states that this $44,596,201 "payment error" amount included the payments made pursuant to the Settlement Agreement. Dkt. 30 ¶ 11.

The FAC alleges that, rather than including the amounts paid pursuant to the Settlement Agreement in the calculation of incurred claims, Defendant should have included these amounts in the figure on Line 2.6 of Part 1 of the MLR Report. As noted, Line 2.6 is reserved for "any amount excluded from claims for MLR purposes that are normally included in claims for financial statement purposes." In Defendant's 2014 form, this line was blank. Plaintiffs allege that it should have included the amounts paid pursuant to the Settlement Agreement, because they were "payment errors."

On September 30 of 2015, Ebenkamp received an MLR rebate check from Defendant in the amount of $174.94. Dkt. 30 ¶ 26. In November 2015, Morris received an MLR rebate check from Defendant in the amount of $118.72. *Id.* ¶ 23. Plaintiffs seek damages of $34,941,646 on behalf of all similarly situated insureds. This amount is the alleged difference between the total amount of all MLR rebates that were paid, and the amount that should have been paid. *Id.* ¶ 44.

### III.     Motion to Remand

####       A.     Legal Standard

Defendant removed this action based on jurisdiction pursuant to 28 U.S.C. § 1441. It claims that there is federal question jurisdiction under 28 U.S.C. 1331. Dkt. 1 ¶ 1. Plaintiffs disagree.

A motion to remand is the procedure used to challenge removal. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). In general, an action may be removed only if it could have been initially brought in a federal court. 28 U.S.C. § 1441(a).

Federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In general, a case arises under federal law when "federal law creates a cause of action." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc., v. Williams*, 482 U.S. 386, 392 (1987). "[D]eterminations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986).

Federal question jurisdiction may also arise when a "substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Wander*, 304 F.3d at 858 (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983)). This is a "'special and small category' of cases in which arising under jurisdiction still lies." *Gunn v. Minton,* 133 S. Ct. 1059, 1064-65 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 699 (2006)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-05914 JAK (JPRx) | Date | May 1, 2017 |
|---|---|---|---|
| Title | Rebecca Morris, et al. v. Blue Shield of California, et al. | | |

Under these standards, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 547 U.S. at 1065. "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 313-14 (2005)).

   **B.** **Application**

      1.   Applicable Complaint

The FAC (Dkt. 30) was filed on September 28, 2016. This was 12 days after the Motion to Remand was filed and 20 days after the Notice of Removal was filed. Whether a civil action can be removed is "generally determined as of the time of the petition for removal." *Local Union 598, Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1215 (9th Cir. 1988). Thus, "jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998). Accordingly, amendments to the pleadings after the time of removal do not affect the determination whether removal was appropriate. *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006); *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 375 (9th Cir. 1997).

Under these standards, the propriety of removal is tested based on the allegations of the Complaint (Dkt. 1-1). However, there are no relevant substantive differences between the Complaint and the FAC that affect this analysis.

      2.   Whether the Complaint Asserts a Claim that Arises Under Federal Law

Plaintiffs do not challenge the claim that this action raises a federal question that is actually disputed and substantial. Thus, the Complaint alleges that Defendant violated federal statutes and regulations. These include the MLR provision in the ACA as well as the associated regulations. 45 C.F.R. Part 158. Dkt. 1 ¶ 13. Further, these matters are actually disputed. Defendant disagrees with Plaintiffs' interpretation of the relevant provisions of the ACA and the associated regulations. Dkt. 1 at 15.

These disputes are also substantial. A substantial amount of money is at issue. Further, a significant purpose of the ACA is to reduce the cost of health insurance. The disputed matters are related to that issue. The MLR requirement arises from a section of the ACA that is entitled "[b]ringing down the cost of health care coverage." 42 U.S.C. § 300gg-18. Defendant also contends that this is a matter of first impression, so that the outcome here may have an effect that goes beyond this particular dispute and affect those that are now, or that may later arise, in other jurisdictions. Dkt. 1 ¶ 16. *See Gunn*, 133 S. Ct. at 1061 ("The substantiality inquiry looks to the importance of the issue to the federal system as a whole.").

Even where a state action presents a contested and substantial federal question, the exercise of federal jurisdiction is not always appropriate. For example, federal jurisdiction should not be exercised where doing so would be inconsistent with the judgment of Congress about the application of § 1331 in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-05914 JAK (JPRx) | Date | May 1, 2017 |
|---|---|---|---|
| Title | Rebecca Morris, et al. v. Blue Shield of California, et al. | | |

allocation of cases between state and federal courts. *Grable*, 545 U.S. at 313-14. As the Ninth Circuit has explained:

> the exercise of federal jurisdiction must not "disturb [ ] any congressionally approved balance of federal and state judicial responsibilities." [*Grable*, 545 U.S.] at 314. The Supreme Court has instructed federal courts to approach 28 U.S.C. § 1331 "'with an eye to practicality and necessity.'" *Merrell Dow*, 478 U.S. [at] 810 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 20 (1983)). The Court has "consistently emphasized that, in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.*

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675–76 (9th Cir. 2012).

Plaintiffs argue that this case is one in which the exercise of federal jurisdiction would be inconsistent with these standards. The premise for this position is that the regulation of insurance is traditionally left to the states. *See Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1034. (7th Cir. 2014) ("a federal role in insurance is not enough to establish that a state-law suit really arises under federal law"). Plaintiffs add that that this is not a case where Congress expressly has "taken over" insurance regulation. Thus, Title I of the ACA contains a very limited preemption clause, which states that "nothing in this title shall be construed to preempt any state law that does not prevent the application for the provision of this title." *Id*. Plaintiffs also argue that the ACA and related regulations often defer to state authority as to their application and permit states to establish stricter MLR Standards. Dkt. 26 at 9.

Plaintiffs add that, although the federal-state operations approved by Congress in the ACA establish new substantive rights, Congress did not create an express private right of action to enforce the ACA. Instead, the ACA relies on existing state law as a means to enforce those rights. Plaintiffs cite *Webb v. Smart Document Solutions, LLC.*, 499 F.3d 1078, 1083 (9th Cir. 2007) for the proposition that "where there is no federal private right of action, federal courts may not entertain a claim that depends on the presence of federal question jurisdiction under 28 U.S.C. § 1331." Dkt. 26 at 6.

This action presents issues that are unique and that address substantive elements of the ACA. The calculation of the MLR is defined by the ACA and in federal regulations, and applies nationally. The MLR provision is designed to ensure that premiums paid by insureds are actually used for healthcare-related expenses, rather than administrative costs and profits. This is integral to the goals of the ACA, which include reducing healthcare costs and ensuring that insureds receive value for their payments.

Although the states have traditionally played a significant role in the oversight of the business of insurance, the issues presented here concern the manner in which health insurers must operate to satisfy the requirements and goals of the ACA. In this respect it is significant that, although states may regulate benefits, premiums, marketing activities or other elements of the insurance business, they may not change how the federal MLR is calculated or applied. That is the central issue in this action. Dkt. 32 at 25. Further, these issues are ones that have a national reach. *See generally NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1050 n.9 (2d Cir. 2014) (in the context of securities regulation "[t]he federal law requirement that national exchanges provide fair and orderly markets is a fundamental element, and not a peripheral detail, of the federal system of securities regulation. According to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-05914 JAK (JPRx) | Date | May 1, 2017 |
|---|---|---|---|
| Title | Rebecca Morris, et al. v. Blue Shield of California, et al. | | |

standards laid out in *Gunn*, this is sufficient to establish importance to the federal system as a whole. (*citing Gunn,* 133 S. Ct. at 1067 (suggesting that "development of a uniform body of [patent] law" was of importance to the federal system as a whole (alterations in original))).

That the ACA does not provide for a private right of action does not change the outcome. As *Grable* explained, the absence of a federal private right of action is "evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable*, 545 U.S. at 318 (citing *Merrell Dow*, 478 U.S. at 814). *Grable* concluded that the meaning of a federal tax provision was an important issue of federal law that was properly adjudicated by a federal court notwithstanding the absence of an express private right of action. *Id.* at 315. The circumstances here are parallel. The MLR provisions of the ACA present important questions of federal law whose disposition "sensibly belongs in a federal court." *Id. See also Shanks v. Dressel*, 540 F.3d 1082, 1093 (9th Cir. 2008) (although the absence of a private federal right of action is no longer dispositive after *Grable*, it remains relevant to our assessment of the 'sensitive judgments about congressional intent' that § 1331 requires. (quotation marks omitted)).

For the foregoing reasons the Motion to Remand is **DENIED**.

**IV.      Motion to Dismiss the FAC**

   **A.      Legal Standard**

A motion to dismiss a cause of action for a failure to state a claim may be brought pursuant to Fed. R. Civ. P. 12(b)(6). In evaluating such a motion, it must be determined whether the complaint states facts that show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal under Rule 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990)).

   **B.      Analysis**

         1.      Whether the MLR Calculations Were Based on "Incurred Claims" under the ACA

As noted, Plaintiffs' claims arise from the contention that the amount reimbursed to enrollees under the Settlement Agreement should not have been included as part of the calculation of "incurred claims" in the numerator of the MLR. The FAC alleges that this amount should instead have been reported on Line 2.6 of Part 1 of Defendant's 2014 MLR report. Dkt. 35 at 13.

Plaintiffs' position is inconsistent with the definition of "incurred claims" in the ACA. Under that statute, the MLR numerator is to include amounts expended on "reimbursement for clinical services provided to enrollees under such coverage." 42 U.S.C. § 300gg-18(a). Payments for services by out-of-network providers are included in incurred claims under this definition. *See* 45 C.F.R. § 158.120(c) (providing that both in-network and out-of-network expenditures from separate insurance contracts may be considered jointly in determining claims incurred for MLR calculation purposes).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-05914 JAK (JPRx) | Date | May 1, 2017 |
|---|---|---|---|
| Title | Rebecca Morris, et al. v. Blue Shield of California, et al. | | |

Plaintiffs argue that the payments made under the Settlement Agreement were not required under the relevant policies, which called for reimbursement of claims at an out-of-network rate. Dkt. 42 at 10. Plaintiffs have not identified any statutory or regulatory provision that supports this position, *i.e.,* that prohibits treating payments as "incurred claims" if they exceed the amount of payment required by a policy.

Defendant argues that its interpretation of the definition of "incurred claims" is supported by the following regulatory history of 45 CFR § 158.140:

> When, pursuant to the Paperwork Reduction Act of 1995 ("PRA"), HHS initially solicited comments on the MLR reporting instructions, the proposed instructions stated the following: "Claims paid" as reported on line 2.1 of Part 2 of the MLR reporting form should "Exclude . . . Ex gratia payments – a voluntary payment made by the issuer in response to a loss for which it is not technically liable under the terms of the policy." . . . In responses to comments on the draft instructions, which HHS submitted to White House Office of Management and Budget ("OMB"), HHS stated that it had received a comment that requested "that CMS remove 'ex gratia' payments from the list of items excluded from claims paid." HHS responded, "To remain consistent with 45 C.F.R. § 158.140, the instruction for Line 2.1 is being revised to remove the reference to 'ex-gratia' payments."

Dkt. 35 at 16-17 (describing regulatory history presented at Dkt. 35-11 at 7). As noted, 45 C.F.R. § 158.40 defines "incurred claims" for purposes of MLR reporting. Although not determinative, this regulatory history supports the view that HHS interpreted the ACA to allow for treatment of claims reimbursements by the insurer as "incurred claims," even when such reimbursements exceeded the amount called for under the policy.[1]

The Settlement Agreement required Defendants to pay reimbursements only for health care services that were covered by the applicable insurance policies. Dkt. 35 at 16. Enrollees seeking reimbursement as part of the Settlement Agreement were required to attest "that they received covered services from a specific provider[.]" Dkt. 30-1 at 12. Thus, the payments constituted reimbursement for clinical services, as is required to be considered incurred claims. Plaintiffs have not contested this interpretation of statute.

   2. <u>Whether Settlement Claims Adjustments Were Paid to or Received by Providers Whose Services Were Covered by the Policy</u>

The HHS regulations require insurers to include in the MLR numerator "direct claims paid to or received by providers . . . whose services are covered by the policy. . . ." 45 CFR § 158.140(a); *see also* Filing Instructions for the 2014 MLR Reporting Year ("2014 MLR Instructions"), Dkt. 35-7 at 31 (applying same definition). Such claims are referred to as "incurred claims." *Id.*

---

[1] Plaintiffs also argue that the payments under the Settlement Agreement were not "ex gratia" payments, because they were made pursuant to legal obligations under that Agreement, and not as a voluntary favor to insureds. Dkt. 42 at 10. It is unnecessary to address this issue. The question presented is not whether the payments made pursuant to the Settlement Agreement were "ex gratia" under the draft rule, but whether any provision of the ACA can reasonably be interpreted to exclude claims adjustments that exceed the amount provided for under a policy. Plaintiff has not provided any support for that position.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-05914 JAK (JPRx) | Date | May 1, 2017 |
|---|---|---|---|
| Title | Rebecca Morris, et al. v. Blue Shield of California, et al. | | |

Plaintiffs argue that the payments made pursuant to the Settlement Agreement were not "paid to or received by providers," because they were made to and retained by enrollees. The Settlement Agreement states that enrollees who obtained covered services from providers that did not participate in their plan's network had "paid the provider out of pocket for care." Dkt. 30-1 at 11, Ex. A ¶ 6. Defendant agreed to reimburse its insureds for the amounts paid to these out of network providers. *Id.* As noted, Defendant did so because it erred in listing these providers as ones that were within its network. This error caused insureds to use these providers. *Id.* ¶¶ 5-6. Plaintiffs argue that, based on these facts, the amounts paid under the Settlement Agreement were never "paid to or received by" the out of network providers as defined by the MLR Rule.

Plaintiffs' interpretation is contrary to the language of the statute. The ACA requires insurers to include in incurred claims on the MLR Report amounts expended "on reimbursement for clinical services provided to enrollees under such coverage." 42 U.S.C. § 300gg-18(a)(1). Plaintiffs have not shown or explained why payments made to insured parties for covered medical services do not constitute such reimbursements. These were payments to insureds for clinical services. That they resulted from an error by the insurer as to those providers who were within its network does not change the analysis; the payments were made because the insureds had coverage.

The language of 45 CFR § 158.140(a) does not support a different conclusion. That regulation includes not only amounts "paid to" providers, but also amounts *"received by"* them. Although the settlement payments were paid to enrollees, rather than healthcare providers, they were made as reimbursements for payments previously made by enrollees to those providers for medical services covered by the policies. Dkt. 35 at 15. A request for reimbursement for covered medical care may be submitted to an insurer by either a provider or an enrollee. In either case, the result is the same: The enrollee receives medical care, the insurer provides coverage to the extent required by the policy, and the provider receives payment. Because the amounts in question were received by healthcare providers, they are within the scope of the regulatory language. Indeed, a failure to include such reimbursements would lead to arbitrary results. As Defendant observes, "[u]nder Plaintiffs' interpretation, a payment made to an enrollee by an issuer the day before the enrollee paid the provider would be an incurred claim, but a payment made to the enrollee two days later would not." Reply, Dkt. 43 at 6. Plaintiffs' interpretation would arbitrarily distinguish such reimbursements from other payments for purposes of calculating the MLR. Nothing in the statute or the HHS regulations supports this interpretation

Plaintiffs also argue that, even if the payments to enrollees are considered payments paid to providers, the payments were not made to "providers . . . *whose services are covered by the policy*," as required by 45 CFR § 158.140(a). This argument is premised on the circumstances here, in which there were payments to enrollees who had in turn made payments to out of network providers. Plaintiffs contend, however, that even if the payments by the insureds were made to or received by such providers, the payments did not qualify as incurred claims within the meaning of the MLR regulations. This argument is unpersuasive. Although the providers were not covered by the policies, their services were. Thus, the Settlement Agreement states that Defendant was not required to reimburse claims that were "not payable for reasons unrelated to the provider's network participation (for example, lack of eligibility)," Settlement Agreement, FAC Ex. A., Dkt. 30-1 at 11. Similarly, the criteria for determining whether a claim should be reimbursed included whether it fell within "covered services." *Id.* at 12. Therefore, these were "providers . . . whose services were covered by the policy" as required by the MLR Rule. That the providers were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-05914 JAK (JPRx) | Date | May 1, 2017 |
|---|---|---|---|
| Title | Rebecca Morris, et al. v. Blue Shield of California, et al. | | |

initially paid at an out-of-network rate, rather than at an in-network rate does not change the analysis.[2]

## V.  Conclusion

For the foregoing reasons the Motion to Remand is **DENIED**. Because Plaintiffs' claims fail as a matter of law, the Motion to Dismiss is **GRANTED** without leave to amend.

In light of this Order, the Joint Request is **MOOT**.

Defendant shall submit a proposed judgment in conformance with this Order on or before May 8, 2017. Prior to the submission of the proposed judgment, counsel for both parties shall meet and confer to seek to reach agreement on the form of the proposed judgment. If no agreement is reached, Defendants shall lodge the proposed judgment, which shall include in the notice that Plaintiffs have until May 15, 2017 to file any objections to its terms in accordance with the Local Rules.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |

---

[2] Plaintiffs also argue that their interpretation of the MLR reporting requirement is supported by Defendant's failure to fill in a number in Line 2.6 of the MLR Report. That line calls for the insurer to identify "any amounts excluded from claims for MLR calculation purposes that are normally included in claims for financial statement purposes." Ex. E to Compendium, Dkt. 35-7. As explained above, Plaintiffs have not sufficiently alleged that the amounts paid pursuant to the Settlement Agreement were improperly included in claims as part of the MLR calculation. There is no showing that these claims were removed from incurred claims for "financial statement purposes." FAC, Dkt. 30 ¶ 39. Because Line 2.6 is used to report items that are recorded differently for MLR calculation and financial statement purposes, it was properly left blank by Defendant.